1 | McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
2 | Hagop T. Bedoyan, #131285
   *hagop.bedoyan@mccormickbarstow.com*
3 | Shane G. Smith, #272630
   *shane.smith@mccormickbarstow.com*
4 | 7647 North Fresno Street
Fresno, California 93720
5 | Telephone:    (559) 433-1300
Facsimile:    (559) 433-2300
6 |
Starnes PL LC
7 | Thomas E. Starnes (*pro hac vice pending*)
   *tomstarnes@starnespllc.com*
8 | 5416 32nd St., NW
Washington, DC 20015
9 | Telephone: (202) 630-9948
10 | Facsimile:  (202) 998-9191

11 | Attorneys for Plaintiffs The African Methodist
Episcopal Zion Church and Kyles Temple
12 | African Methodist Episcopal Zion Church of
Sacramento, California

13 | UNITED STATES BANKRUPTCY COURT

14 | EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| 15 In re | Case No.  20-23726-A |
| 16 AME ZION WESTERN EPISCOPAL | |
| 17 DISTRICT, | Chapter 11 |
| 18 Debtor-in-Possession. | **Adv. Proceeding No.:** |
| 19 KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF | DC No.: |
| 20 SACRAMENTO, CALIFORNIA, a California Non-profit Religious Corporation, and THE | **EXHIBITS TO COMPLAINT FOR INJUNCTIVE RELIEF, FOR** |
| 21 AFRICAN METHODIST EPISCOPAL ZION CHURCH, INC., a North Carolina Non-profit | **DECLARATORY JUDGMENT, TO QUIET TITLE, TO IMPOSE A CONSTRUCTIVE** |
| 22 Corporation, | **TRUST, AND UNJUST ENRICHMENT** |
| 23 Plaintiffs, | Hearing |
| 24 v. | Date: Time: |
| 25 AME ZION WESTERN EPISCOPAL DISTRICT, a California corporation, THE | Place:  Dept. A, Ct. Rm. 28, 7th Fl. United States Bankruptcy Court |
| 26 SOCOTRA OPPORTUNITY FUND LLC, OLD REPUBLIC TITLE COMPANY, | 501 "I" Street Sacramento, CA 95814 |
| 27 Defendants. | Judge:  Honorable Fredrick E. Clement |
| 28 | |

| EXHIBIT | DESCRIPTION | PAGE NO. |
|:---:|:---:|:---:|
| A | Grant Deed Dated April 23, 2019 | 1 - 5 |
| B | Grant Deed Dated November 18, 1970 | 6 - 7 |
| C | Grant Deed Dated November 23, 1971 | 8 - 10 |
| D | Individual Grant Deed Dated May 27, 1981 | 11 - 13 |
| E | Grant Deed Dated August 3, 1982 | 14 - 15 |
| F | Restated Articles of Incorporation Dated November 19, 2007 | 16 - 18 |
| G | Kyles Temple Statement of Information Dated September 7, 2018 | 19 - 20 |
| H | AME Zion Western Episcopal District Statement of Information Dated October 24, 2018 | 21 - 22 |
| I | Kyles Temple Certificate of Status | 23 – 24 |
| J | Promissory Noted Secured by Deed of Trust Dated December 5, 2019 | 25 – 32 |
| K | Deed of Trust to Secure Promissory Note to Pay Socotra Dated November 13, 2019 | 33 - 64 |

Respectfully submitted.

Dated: May 23, 2022

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

By: _____

Hagop T. Bedoyan
Shane G. Smith
Attorneys for Plaintiffs, The African Methodist
Episcopal Zion Church and Kyles Temple African
Methodist Episcopal Zion Church of Sacramento,
California

# EXHIBIT "A"

**RECORDING REQUESTED BY**
Cornerstone Title Company

**AND WHEN RECORDED MAIL DOCUMENT TO**
Ame Zion Western Episcopal District
2940 42ⁿᵈ Street
Sacramento, CA 95817

**Sacramento County**
**Donna Allred, Clerk/Recorder**

Doc # **201904230902**

| | | |
|---|---|---|
| 4/23/2019 | 12 57 17 PM | Fees | $29 00 |
| PMC | | Taxes | $0 00 |
| Titles | 1 | PCOR | $0 00 |
| Pages | 4 | Paid | $29 00 |

_____ Space Above This Line for Recorder's Use Only _____

A P N  **014-0152-041-0000**        File No  **3675119-01102 (CV )**

# GRANT DEED

The Undersigned Grantor(s) Declare(s)  DOCUMENTARY TRANSFER TAX $ CITY TRANSFER TAX $, SURVEY MONUMENT FEE $

[ xx ]  computed on the consideration or full value of property conveyed, OR
[     ]  computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
[     ]  unincorporated area,  [xx ] City of Sacramento, and
[ xx ]  Exempt from transfer tax, Reason  Confirms title

        11911 - no consideration

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **AME Zion Western Episcopal District who acquired title as Kyles Temple African Methodist Episcopal Zion Church of Sacramento, a California corporation**

hereby GRANTS to **AME Zion Western Episcopal District**

the following described property in the **City of,** Sacramento, State of CA

See **Exhibit "A"** attached hereto and made part hereof for complete legal description

Exempt from fee under GC 27388 1(a)(2)
recorded concurrently in connection with a
transfer of real property that is a residential
dwelling to an owner-occupier

Mail Tax Statements To  SAME AS ABOVE

Grant Deed - continued

Date 4/15/2019

A P N **014-0152-041-0000**                                    File No **3675119-01102 (CV)**

Dated **4/15/2019**

**Ame Zion Western Episcopal District**

*Sheila Quintana*

By Sheila Quintana, CFO

> A notary public or other officer completing
> this certificate verifies only the identity of the
> individual who signs the document to which
> this certificate is attached and not the
> truthfulness, accuracy, or validity of that
> document

STATE OF _____CA_____                          )SS
COUNTY OF ___Solano___                          )

On __April 15th 2019__ , before me, ___D Moss___ , Notary
Public, personally appeared __Sheila Quintana__
_____ , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct

WITNESS my hand and official seal

Signature *D Moss*

My Commission Expires __11/7/2020__

D. MOSS
COMM # 2167475
NOTARY PUBLIC  CALIFORNIA
SOLANO COUNTY
COMM EXPIRES NOV 7, 2020

*This area for official notarial seal*

Notary
Name ___D Moss___

Notary Registration
Number __2167475__

Notary
Phone ___707-297-1587___
County of Principal Place of
Business ___Solano___

0003

**Exhibit A**

REAL PROPERTY IN THE CITY OF SACRAMENTO, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS

PARCEL ONE

Lots 6, 7, 8, 9 and 10, as shown on the, "Plat of East Side Addition to Oak Park", recorded June 19, 1908, in Book 9, of Maps, Map No 8, Records of said County

PARCEL TWO

Lot 13, as shown on the, "Plat of East Side Addition to Oak Park", recorded in the Office of the County Recorder, of Sacramento County, in Book 9, of Maps, Map No 8

Excepting therefrom the following

Beginning, at the Southeast corner, of Lot 13, as the same is shown on Official, "Plat of East Side Addition to Oak Park", recorded in the Office of the County Recorder, of Sacramento County, on June 19, 1908, in Book 9, of Maps, Map No 8, which point is further described as being located, North 77° 32 60', West, 103 29 feet, from a monument, marking the new center line intersection, of Forty-Second Street and Fifth Avenue, in said City of Sacramento, thence, from the point of beginning, South 89° 59 32', West, 39 99 feet, along the Southerly line, of said Lot 13, to the Southwest corner thereof, thence, North 2° 12 65', West, 12 90 feet, along the Westerly line, of said Lot 13, to a point, thence, South 89° 08 24', East, 40 02 feet, along a line parallel to, and distant 33 00 feet, at right angles Northerly, from the new center line of Fifth Avenue, to a point on the Easterly line, of said Lot 13, thence, South 2° 12 65', East, 12 28 feet, along the Easterly line, of said Lot 13, to a point of beginning

PARCEL THREE

All of Lot 14, as shown on the Official, "Plat of East Side Addition to Oak Park", recorded in Book 9, of Maps, Map No 8, Records of said County

EXCEPTING, that portion thereof, described as follows

Beginning, at the original Southeast corner, of said Lot 14, which said point is further described as being located, North 81° 01 30', West, 142 70 feet, from a monument, marking the present center line, intersection of 5th Avenue and 42nd Street, of said City of Sacramento, thence, from the point of beginning, South 89° 59 32', West, 39 99 feet, along the original South line, of said Lot 14, to the Southwest corner thereof, thence, North 2° 12 65', West, 13 51 feet, along the West line, of said Lot

14, to a point on the present North line, of said 5th Avenue, thence, South 89° 08 24', East, 40 02 feet, along the present North line, of said 5th Avenue, to the East line, of said Lot 14, thence, South 2° 12 65', East, 12 90 feet, along the East line, of said Lot 14, to the point of beginning

PARCEL FOUR

Lot 15, as shown on the Official, "Plat of East Side Addition to Oak Park", recorded in Book 9, of Maps, Map No 8, Records of said County
EXCEPTING THEREFROM

All that portion thereof, conveyed by the Deed, dated July 14, 1937, recorded July 14, 1937, in Book 646, of Official Records, Page 179, executed by Property Finance Corporation, a corporation, to the City of Sacramento, a municipal corporation, described as follows

Beginning, at the Southeast corner, of Lot 15, as shown on the Official, "Plat of East Side Addition to Oak Park", which point is further described as being located, North 82° 58 96', West, 182 21 feet, from a monument, marking the center line intersection of 42nd Street and 5th Avenue, in said City of Sacramento, thence, from the point of beginning, South 89° 59 32', West, 41 74 feet, along the Southerly line, of said Lot 15, to the Southwest corner thereof, thence, North 2° 10 44', West, 14 14 feet, along the Westerly line, of said Lot 15, to a point, thence, South 89° 08 21', East, 41 76 feet, along a line parallel to and distant 33 00 feet, at right angles, Northerly, from the New Center Line, of said 5th Avenues, to a point on the Easterly line of said Lot 15, thence South 2° 12 65', East, 13 51 feet, along the Easterly line, of said Lot 15, to the point of beginning

APN 014-0152-041-0000

EXHIBIT "B"

Documents provided by DataTree ...Copyright 2009, All rights reserved.

Sacramento County

| | |
|---|---|
| RECORDING REQUESTED BY | BOOK 7 0-11-18 PAGE 297 |
| SECURITY TITLE INSURANCE CO. | OFFICIAL RECORDS SACRAMENTO COUNTY CALIF. Nov 18  2 35 PM 1970 |

AND WHEN RECORDED MAIL TO

NAME  Kyles Temple African Methodist
ADDRESS  Episcopal Zion Church
CITY &  2940 42nd Street
STATE  Sacramento, California

Prcl #10-132-13:10-152-14

$2.00

87167

SPACE ABOVE THIS LINE FOR RECORDER'S USE

MAIL TAX STATEMENTS TO

NAME  SAME AS ADDRESS ABOVE:
ADDRESS
CITY &
STATE

Documentary transfer tax $__12.10____
☐ Computed on full value of property conveyed, or
☐ Computed on full value less liens & encumbrances remaining thereon at time of sale.

X _Viola M. Brooks_
Signature of declarant or agent determining tax - firm name
☐ Unincorporated area   City of Sacramento

## Grant Deed

THIS FORM FURNISHED BY SECURITY TITLE INSURANCE COMPANY

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

VIOLA M. BROOKS

hereby GRANT(S) to  KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH
OF SACRAMENTO, CALIFORNIA, a corporation

the following described real property in the  City of Sacramento
county of  Sacramento  , state of California:

Lot 10, as shown on the "Plat of East Side Addition to Oak Park",
recorded in the office of the County Recorder of Sacramento
County, June 19, 1908, in Book 9 of Maps, Map No. 8.

EXCEPTING THEREFROM the West 50 feet thereof.

Dated  November 3, 1970

_Viola M. Brooks_
Viola M. Brooks

STATE OF CALIFORNIA
COUNTY OF Sacramento  } SS.
On  November 3, 1970  before me, the under-
signed, a Notary Public in and for said County and State, personally
appeared  Viola M. Brooks

known to me
to be the person__ whose name_ is_ subscribed to the within
instrument and acknowledged that  she  executed the same.

_Signature_
Signature of Notary
J. E. Bargfeldt 7/10/71
Name (Typed or Printed) of Notary

FOR NOTARY SEAL OR STAMP

J. E. BARGFELDT
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
SACRAMENTO COUNTY

Title Order No._____  Escrow No.  190612 JEB

MAIL TAX STATEMENTS AS DIRECTED ABOVE

L-1 (GS) (Rev. 5-67) ½ pt.

EXHIBIT "C"

Document provided by DataTree LLC via it's proprietary imaging system "Copyright 2005, All rights reserved.

Sacramento County

**RECORDING REQUESTED BY**

Lot 14= 014-152-19
Lot 15= 014-152-20

AND WHEN RECORDED MAIL TO

Name: KYLES-TEMPLE AFRICAN METHODIST
Street Address: EPISCOPAL ZION CHURCH
City State Zip:

**MAIL TAX STATEMENTS TO**

Name:
Street Address: CAPITAL FEDERAL SAVINGS/LOAN
City State Zip: P. O. Box 9066
Sacramento, California

**BOOK 71 11 23 PAGE 32**

OFFICIAL RECORDS
RECORDED AT REQUEST OF
Transamerica Title Insurance Company

NOV 23 1971 8-00 AM

Edmund J. Harper

SACRAMENTO COUNTY RECORDER

$2.80

39853

— SPACE ABOVE THIS LINE FOR RECORDER'S USE —

DOCUMENTARY TRANSFER TAX DUE $ 6.60
☑ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED.
☐ COMPUTED ON FULL VALUE LESS LIENS AND ENCUMBRANCES
REMAINING THEREON AT TIME OF SALE.

Taylor Transamerica
Declarant's signature (or agent)    Firm Name

**TRANSFER TAX $ 6.60**

# GRANT DEED

(Escrow No. 150430-A)

By this instrument dated .......... November 16, 1971 .......... , for a valuable consideration,

DOROTHY H. GUBEL, a widow

hereby GRANTS to

KYLES-TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF
SACRAMENTO CALIFORNIA, A California corporation
the following described Real Property in the State of California, County of Sacramento

City of .......... Sacramento ..........

SEE EXHIBIT "A"

Dorothy H Gubel
DOROTHY H. GUBEL

STATE OF CALIFORNIA } SS.
COUNTY OF Sacramento

On .......... November 16 .......... 19 71 , before me, the undersigned, a Notary Public in and for said County and State, personally appeared Dorothy H. Gubel .......... known to me to be the person .......... whose name .......... is .......... subscribed to the within instrument, and acknowledged to me that S he .......... executed the same.

Notary's Signature Janet S. Davidson

JANET S. DAVIDSON
NOTARY PUBLIC
SACRAMENTO COUNTY
CALIFORNIA

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

39853 NOV 23 1971

Filed 05/23/22     Documents provided by DataTree LLC via its proprietary imaging system. Copyright 2003. All rights reserved.     Doc 6

Sacramento County

PARCEL NO. 1:                    EXHIBIT "A"

All of Lot 14, as shown on the official "Plat of East Side
Addition to Oak Park", recorded in Book 9 of Maps, Map No.
8, records of said County.

EXCEPTING that portion thereof described as follows:

BEGINNING at the original Southeast corner of said Lot 14;
which said point is further described as being located North
81° 01.30' West 142.70 feet from a monument marking the
present center line intersection of 5th Avenue and 42nd Street,
of said City of Sacramento; thence from the point of beginning
South 89° 59.32' West 39.99 feet along the original South line
of said Lot 14, to the Southwest corner thereof; thence North
2° 12.65' West 13.51 feet along the West line of said Lot 14,
to a point on the present North line of said 5th Avenue; thence
South 89° 08.24' East 40.02 feet along the present North line
of said 5th Avenue, to the East line of said Lot 14; thence
South 2° 12.65' East 12.90 feet along the East line of said
Lot 14, to the point of beginning; and containing 528.00 square
feet, more or less.

PARCEL NO. 2:

Lot 15, as shown on the official "Plat of East Side Addition
to Oak Park", recorded in Book 9 of Maps, Map No. 8, records
of said County.

EXCEPTING THEREFROM all that portion thereof conveyed by the
Deed dated July 14, 1937, recorded July 14, 1937, in Book
646 of Official Records, Page 179, executed by Property
Finance Corporation, a corporation, to the City of Sacramento,
a Municipal Corporation, described as follows:

BEGINNING at the Southeast corner of Lot 15 as shown on the
official "Plat of East Side Addition to Oak Park", which point
is further described as being located North 82° 58.96' West
182.21 feet from a monument marking the center line intersection
of 42nd Street and 5th Avenue in said City of Sacramento, thence
from the point of beginning South 89° 59.32' West 41.74 feet
along the Southerly line of said Lot 15, to the Southwest corner
thereof; thence North 2° 10.44' West 14.14 feet along the Westerly
line of said Lot 15 to a point; thence South 89° 08.24' East 41.76
feet along a line parallel to and distant 33.00 feet at right
angles Northerly from the new center line of said 5th Avenue, to
a point on the Easterly line of said Lot 15; thence South 2° 12.65'
East 13.51 feet along the Easterly line of said Lot 15, to the
point of beginning.

BOOK 71.11 23 PAGE 33

0010

# EXHIBIT "D"

# 810527

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2005, All rights reserved.

**RECORDING REQUESTED BY**

Western Title

**AND WHEN RECORDED MAIL TO**

NAME  Kyles Temple Ame Zion Church
ADDRESS  2940 42nd St.
CITY &  Sacramento, CA  95817
STATE

Title Order No._____ Escrow No. 129436 ss

---

OFFICIAL RECORDS
RECORDED AT REQUEST OF
WESTERN TITLE INSURANCE CO.

80589

MAY 27 8 00 AM  1981
J.G. Simpson
SACRAMENTO COUNTY
CLERK-RECORDER

B81 0527P 566

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

**MAIL TAX STATEMENTS TO**

NAME   as directed above
ADDRESS
CITY &
STATE

Documentary transfer tax $...16.50..............
☒ Computed on full value of property conveyed, or
☐ Computed on full value less liens and encumbrances
remaining thereon at time of sale.
...................................................
Signature of declarant or Agent determining tax — firm name

## Individual Grant Deed

WESTERN TITLE FORM NO. 104

**$5.00**

**FOR VALUE RECEIVED,**   THEODORE H. CLARK, a married man
    WILLIAM DEWITT BOND, a married man
 and ELLEN MARIE PATTIO,   a married woman
**GRANT____to**
 KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF SACRAMENTO,
      CALIFORNIA
all that real property situate in the    City of Sacramento

, State of California, described as follows:

**County of**     Sacramento

Lot 6 of East Side Addition to Oak Park, according to the official
plat thereof, filed in the office of the Recorder of Sacramento County,
California, on April 26, 1966 in Book 9 of Maps, Map No. 8.

AP # 014 152 12



Dated   May 13           1981

Theodore H Clark
Theodore H. Clark

Ellen M Pattio
Ellen Marie Pattio

William Dewitt Bond
WILLIAM DewITT BOND
By: Theodore H Clark
Theodore H. Clark, his atty. in fact

**STATE OF CALIFORNIA**            } ss.
      County of  Sacramento
On May  26    19 81  before me, the undersigned,
a Notary Public, in and for said State, personally appeared
 Theodore H. Clark & Ellen Marie Pattio
known to me to be the person s  whose name s  are
subscribed to the within instrument, and acknowledged to me that
   Y  executed the same.

Sherilyn L Scott
Notary Public



**FOR NOTARY SEAL OR STAMP**

OFFICIAL SEAL
SHERILYN L. SCOTT
NOTARY PUBLIC - CALIFORNIA
COUNTY OF SAN MATEO
My Commission Expires November 6, 1982

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

Filed 05/23/22   Case 22-02030   Doc 6

# 810527

STATE OF CALIFORNIA,
County of _Sacramento_ } ss.   **B810527P 567**

On this __26th__ day of __May__ _____ in the year one thousand nine hundred and ____ **eighty-one**
before me, ____the undersigned_____ a Notary Public, State of California, duly commissioned and sworn, personally appeared
_____**Theodore H. Clark**_____ known to me to be the person whose name is sub-
scribed to the within instrument as the attorney in fact of ____**William Dewitt Bond**

and acknowledged to me that ____he subscribed the name ____ of **William Dewitt Bond**

thereto as principal, and h.i.s ____ own name as attorney in fact.
IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the
____County of____ **Sacramento**_____ the day and year in this certificate
first above written.

OFFICIAL SEAL
SHERILYN L. SCOTT
NOTARY PUBLIC - CALIFORNIA
COUNTY OF SAN MATEO
My Commission Expires December 6, 1982

OFFICIAL SEAL
SHERILYN L. SCOTT
NOTARY PUBLIC - CALIFORNIA
COUNTY OF SAN MATEO
My Commission Expires December 6, 1982

Acknowledgment—Attorney in Fact.     My Commission Expires     **12/6/82**     Notary Public, State of California.

0015

EXHIBIT "E"

Filed 05/23/22    Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.    Case 22-02030    Doc 6

S.C.A.T.S. - MARK LARWOOD COMPANY

**BOOK**    **PAGE**

82 08 -3 0015     111641

RECORDING REQUESTED BY

TRANSAMERICA TITLE INSURANCE
COMPANY

AND WHEN RECORDED MAIL TO

Name   Kyles Temple A.M.E. Zion Church
Street   2940 42nd Street
Address
City   Sacramento, Calif. 95817
State
Zip

OFFICIAL RECORDS
RECORDED AT REQUEST OF
Transamerica Title Insurance Company

AUG 31 1982   8:00 AM

J.A. Simpson
SACRAMENTO COUNTY
CLERK-RECORDER

MAIL TAX STATEMENTS TO

Name   same as addressee shown above
Street
Address
City
State
Zip

SPACE ABOVE THIS LINE FOR RECORDER'S USE

FEE
$4
G

DOCUMENTARY TRANSFER TAX $ 6.05
   XX COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
   OR COMPUTED ON FULL VALUE LESS LIENS AND
   ENCUMBRANCES REMAINING AT TIME OF SALE.
TRANSAMERICA TITLE INSURANCE CO.
Signature of Declarant or Agent determining tax. Firm Name

# GRANT DEED

(Escrow No. 174607 )

By this instrument dated ........ August 2, 1982 ..................................................., for a valuable consideration,

FRANKLIN JAY NATEN, an unmarried man

hereby GRANTS to

KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF THE CITY OF
SACRAMENTO, a non-profit corporation

the following described Real Property in the State of California, County of..... Sacramento ...........................................

City of .... Sacramento

LOT 13 AS SHOWN ON THE "PLAT OF EAST SIDE ADDITION TO OAK PARK", RECORDED IN
THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO COUNTY IN BOOK 9 OF MAPS, MAP
NO. 8, EXCEPTING THEREFROM THE FOLLOWING:

BEGINNING AT THE SOUTHEAST CORNER OF LOT 13, AS THE SAME IS SHOWN ON THE
OFFICIAL "PLAT OF EAST SIDE ADDITION TO OAK PARK", RECORDED IN THE OFFICE
OF THE COUNTY RECORDER OF SACRAMENTO COUNTY ON JUNE 19, 1908, IN BOOK 9 OF
MAPS, MAP NO. 8; WHICH POINT IS FURTHER DESCRIBED AS BEING LOCATED NORTH
77 DEGREES 32.60 MINUTES WEST 103.29 FEET FROM A MONUMENT MARKING THE NEW
CENTER LINE INTERSECTION OF FORTY-SECOND STREET AND FIFTH AVENUE, IN SAID
CITY OF SACRAMENTO; THENCE FROM THE POINT OF BEGINNING, SOUTH 89 DEGREES
59.32 MINUTES WEST 39.99 FEET ALONG THE SOUTHERLY LINE OF SAID LOT 13, TO
THE SOUTHWEST CORNER THEREOF; THENCE NORTH 2 DEGREES 12.65 MINUTES WEST 12.90
FEET ALONG THE WESTERLY LINE OF SAID LOT 13 TO A POINT; THENCE SOUTH 89
DEGREES 08.24 MINUTES EAST 40.02 FEET ALONG A LINE PARALLEL TO AND DISTANT
33.00 FEET AT RIGHT ANGLES NORTHERLY FROM THE NEW CENTER LINE OF FIFTH AVENUE
TO A POINT ON THE EASTERLY LINE OF SAID LOT 13; THENCE SOUTH 2 DEGREES 12.65
MINUTES EAST 12.28 FEET ALONG THE EASTERLY LINE OF SAID LOT 13; TO A POINT OF
BEGINNING.

Assessor's Parcel No. 014-152-18

Franklin Jay Naten

STATE OF CALIFORNIA
COUNTY OF Sacramento

On August 2 ..........., 19 82 , before me, the undersigned, a Notary Public in and for said
County and State, personally appeared Franklin Jay Naten, proven to me on
the basis of satisfactory evidence .......... to be the
person ..... whose name ... is ..... subscribed to the within instrument, and acknowledged to me that ...he... executed the same.

Notary's Signature Grace M. Masino

OFFICIAL SEAL
GRACE M. MASINO
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires March 26, 1986

Form No. 140   Revised 9-67

MAIL TAX STATEMENTS AS DIRECTED ABOVE

0015

EXHIBIT "F"

A0bb9195    168263

## RESTATED ARTICLES OF INCORPORATION

FILED
in the office of the Secretary of State
of the State of California

NOV 19 2007

The undersigned certify that:

1. They are the chairman of the board and the secretary, respectively, of Kyles Temple African Methodist Episcopal Zion Church of Sacramento, California.

2. The Articles of Incorporation of this corporation are amended and restated to read as follows:

### Article I

The name of this corporation is Kyles Temple African Methodist Episcopal Zion Church of Sacramento, California.

### Article II

A. This corporation is a **RELIGIOUS CORPORATION** and is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law exclusively for religious purposes.

B. The specific purpose of this said organization is organized exclusively for religious purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organization under section 501(c) (3) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

### Aritcle III

This corporation elects to be governed by all of the provisions of the Nonprofit Corporation Law of 1980 not otherwise applicable to it under Part 5.

### Article IV

No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

### Article V

The property of this corporation is irrevocably dedicated to religious purposes and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person. Upon the dissolution of the organization, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c) (3) of the Internal Revenue Code, or corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not disposed of shall be disposed of by the Superior Court of the county in which the principal office of the organization is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

3. The foregoing amendment and restatement of Articles of Incorporation has been duly approved by the board of trustees.

4. The foregoing amendment and restatement of Articles of Incorporation has been duly approved by the required vote of the members.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

DATE: _11/18/07_

_John J. Wade_
John Wade, Chairman of the Board of Trustees

_Ida M. Francis_
Ida M. Francis, Secretary

0018

# EXHIBIT "G"

**N**



# State of California
## Secretary of State

### Statement of Information
(Domestic Nonprofit, Credit Union and General Cooperative Corporations)

Filing Fee: $20.00. If this is an amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**G026587**

# FILED

In the office of the Secretary of State
of the State of California

**SEP-07 2018**

| 1. | CORPORATE NAME |
|---|---|
| | KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF SACRAMENTO,  CALIFORNIA |

| 2. | CALIFORNIA CORPORATE NUMBER |
|---|---|
| | C0168263 |

This Space for Filing Use Only

**Complete Principal Office Address** (Do not abbreviate the name of the city. Item 3 cannot be a P.O. Box.)

| 3.  STREET ADDRESS OF PRINCIPAL OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 2940 42ND. STREET, SACRAMENTO, CA 95817 | | | |

| 4.  MAILING ADDRESS OF THE CORPORATION | CITY | STATE | ZIP CODE |
|---|---|---|---|
| BRANDON P. FISHER   5590 AMNEST WAY, SACRAMENTO, CA 95835 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 5.  CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| BRANDON P FISHER   5590 AMNEST WAY, SACRAMENTO, CA 95835 | | | | |

| 6.  SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| SUZZETTE M HAYES   7767 24TH STREET, SACRMENTO, CA 95832 | | | | |

| 7.  CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| ANNETTE TILLIS   6301 BROADWAY, SACRAMENTO, CA 95820 | | | | |

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 9 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 9 must be left blank.

| 8.  NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| GLEN A BASPED |

| 9.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 6677 GREENBACK LANE, SACRAMENTO, CA 95621 | | | |

**Common Interest Developments**

| 10. | ☐ | Check here if the corporation is an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act, (California Civil Code section 4000, et seq.) or under the Commercial and Industrial Common Interest Development Act, (California Civil Code section 6500, et seq.).  The corporation must file a Statement by Common Interest Development Association (Form SI-CID) as required by California Civil Code sections 5405(a) and 6760(a).  Please see instructions on the reverse side of this form. |
|---|---|---|

| 11.  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT. |
|---|

| 09/07/2018 | ANNETTE  TILLIS | TREASURER | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-100 (REV 01/2016) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

EXHIBIT "H"



**State of California**
**Secretary of State**

N

**Statement of Information**
(Domestic Nonprofit, Credit Union and General Cooperative Corporations)

**Filing Fee: $20.00. If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**G127055**

# FILED

In the office of the Secretary of State
of the State of California

**OCT-24 2018**

| 1. **CORPORATE NAME** |
|---|
| AME ZION WESTERN EPISCOPAL DISTRICT |

| 2. **CALIFORNIA CORPORATE NUMBER** |
|---|
| C3958634 |

This Space for Filing Use Only

**Complete Principal Office Address** (Do not abbreviate the name of the city. Item 3 cannot be a P.O. Box.)

| 3. STREET ADDRESS OF PRINCIPAL OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 8408 LOIRE COURT, STOCKTON, CA 95209 | | | |

| 4. MAILING ADDRESS OF THE CORPORATION | CITY | STATE | ZIP CODE |
|---|---|---|---|
| DR. SANDRA K. DAVIS   2339 W HAMMER LN, STOCKTON, CA 95209 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 5. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| STACCATO POWELL   9920 LOS LOGOS CIRCLE, GRANITE BAY, CA 95746 | | | | |

| 6. SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| JAWAAD LOVE   1420 MYRTLE ST., OAKLAND, CA 94607 | | | | |

| 7. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| SHEILA QUINTANA   653 BRITANNIA DRIVE, VALLEJO, CA 94591 | | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 9 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 9 must be left blank.

| 8. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| SANDRA K DAVIS |

| 9. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 8408 LOIRE COURT, STOCKTON, CA 95209 | | | |

**Common Interest Developments**

10. ☐ Check here if the corporation is an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act, (California Civil Code section 4000, et seq.) or under the Commercial and Industrial Common Interest Development Act, (California Civil Code section 6500, et seq.). The corporation must file a Statement by Common Interest Development Association (Form SI-CID) as required by California Civil Code sections 5405(a) and 6760(a). Please see instructions on the reverse side of this form.

11. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 10/24/2018 | SANDRA K. DAVIS | TRUSTEE | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-100 (REV 01/2016) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

EXHIBIT "I"



# Secretary of State
## Certificate of Status

I, SHIRLEY N. WEBER, PH.D., California Secretary of State, hereby certify:

| | |
|---|---|
| **Entity Name:** | KYLES TEMPLE AFRICAN METHODIST EPISCOPAL ZION CHURCH OF SACRAMENTO, CALIFORNIA |
| **Entity No.:** | 0168263 |
| **Registration Date:** | 08/28/1936 |
| **Entity Type:** | Nonprofit Corporation - CA - Religious |
| **Formed In:** | CALIFORNIA |
| **Status:** | Active |

The above referenced entity is active on the Secretary of State's records and is authorized to exercise all its powers, rights and privileges in California.

This certificate relates to the status of the entity on the Secretary of State's records as of the date of this certificate and does not reflect documents that are pending review or other events that may impact status.

No information is available from this office regarding the financial condition, status of licenses, if any, business activities or practices of the entity.



**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California this day of May 21, 2022.

**SHIRLEY N. WEBER, PH.D.**
**Secretary of State**

**Certificate No.:** 014099024

To verify the issuance of this Certificate, use the Certificate No. above with the Secretary of State Certification Verification Search available at bizfileOnline.sos.ca.gov.

0024

EXHIBIT "J"

## PROMISSORY NOTE SECURED BY DEED OF TRUST

$410,000.00

Date: 12/05/2019
Sacramento, California
*(city)*

*Property Address:*     **2940 42nd Street, Sacramento, CA 95817** *(the "Property")*

FOR VALUE RECEIVED, the undersigned, **AME Zion Western Episcopal District** ("Borrower"), hereby promises to pay to **The Socotra Opportunity Fund, LLC, a California Limited Liability Company** ("Lender"), the principal sum of **Four Hundred Ten Thousand and 00/100 Dollars ($410,000.00)**, together with interest on the unpaid principal balance of this Promissory Note Secured by Deed of Trust ("Note"), as follows:

1.    **Interest.**    Interest on the unpaid principal balance will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to **Ten and One Quarter percent (10.25%)**. Borrower's interest rate may change pursuant to Section 2.5 and/or Section 2.10 and/or Section 6 of this Note. Unless otherwise provided in this Note, interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

2.    **Payment of Principal and Interest.**
     2.1    **Payments.**   **Interest-only** payments shall be due and payable in consecutive monthly installments of **Three Thousand Five Hundred Two and 08/100 Dollars ($3,502.08)** on the 1st day of each month beginning on **02/01/2020.** Such payments shall continue until the entire indebtedness evidenced by this Note and all accrued and unpaid interest and fees are fully paid, with any unpaid principal and interest due and payable on **01/01/2023** (the "Maturity Date").
     Payments due under the Note shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or the Security Instrument (as that term is defined in Section 12 of this Note) is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
     2.2    **Balloon Payment.**   The payment schedule contained in this loan requires that Borrower make a balloon payment on the Maturity Date. This balloon payment is more than double the amount of the regular payments.
     2.3    **Order of Application of Payments.**   Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.
     2.4    **Delivery of Payments.**   Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under paragraph 4 of this Note. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.
     2.5    **Adjustable Interest Rate and Payment Changes.**
       2.5.1    **Change Dates.** The initial fixed interest rate Borrower pays will change on the first day of each month beginning with the payment on **02/01/2022,** and the adjustable interest rate Borrower will pay may change on the first day every month thereafter. The date on which Borrower's initial fixed interest rate changes to an adjustable interest rate, and each date on which Borrower's adjustable interest rate could change is called a "Change Date."

# Attachment 8 - Promissory Note
Case 20-23726

**2.5.2** **The Index.** At each Change Date, Borrower's interest rate will be based on an Index. The "Index" is the Prime Rate as published in the *Wall Street Journal*. The most recent Index figure available as of the date of the first day of the month preceding each Change Date is called the "Current Index." If the Index is no longer available, Lender will choose a new index that is based upon comparable information. Lender will give Borrower notice of this choice.

**2.5.3** **Calculation of Change.** Before the Change Date, Lender will calculate Borrower's new interest rate by adding **Six and One Half percentage points (6.50%)** ("Margin") to the Current Index. Lender will then round the result of this addition to the next higher one-quarter of one percentage point (0.25%). Subject to the Floor Rate stated in Section 2.5.4 below, this rounded amount will be Borrower's new interest rate until the Change Date.

**Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at Borrower's new interest rate in substantially equal payments. The result of this calculation will be the new amount of Borrower's monthly payment (only applicable if an amortized loan).**

**2.5.4** **Limits on Interest Rate Change.** The interest rate Borrower is required to pay at the first Change Date will not be greater than **12.25%** or less than **10.25%**. Thereafter, Borrower's adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest Borrower has been paying for the preceding month. Borrower's interest rate will never be greater than **20.25%** (the "Maximum Rate"), nor less than **10.25%** (the "Floor Rate") except as provided in Section 6 herein.

**2.5.5** **Effective Date of Change.** Borrower's new interest rate will become effective on the Change Date. Borrower will pay the amount of his, her or their new monthly payment beginning on the first monthly payment date after the Change Date.

**2.5.6** **Notice of Change.** Lender will deliver or mail to me a notice of any change in Borrower's interest rate and the amount of Borrower's monthly payment before the effective date of any change. The notice will include information required by law to be given to Borrower and also the title and telephone number of a person who will answer any question Borrower may have regarding the notice.

**2.6** **REMOVED**

**2.7** **REMOVED**

**2.8** **Collateral Reserve.** Out of the Loan proceeds, Lender will hold in reserve an amount equal to **Fifteen Thousand and 00/100 Dollars ($15,000.00)** as a collateral reserve account (the "Collateral Reserve"). Lender will deposit the Collateral Reserve into a non-interest bearing account, and in its sole and absolute discretion, may use the Collateral Reserve to pay for interest payments, maintaining and improving the property, including any and all deferred maintenance required on the property, taxes, insurance premiums, supplies, and all other costs in which the Lender may need to protect and secure its security interest in the property. Borrower agrees that Lender shall have sole and absolute right and discretion to determine the application of funds held in the Collateral Reserve. Borrower acknowledges and agrees that the amounts held in reserve under this paragraph are part of the Loan principal, and bear interest.

**2.9** **REMOVED**

**2.10** **Discretionary Right to Extension.** Lender shall have the discretionary right to extend the Maturity Date of the Note in six (6) month increments, without the prior notification to or consent of Borrower.

**2.10.1** **Extension Fee.** If Lender exercises its discretionary right to extend the Maturity Date of the Note, Borrower shall pay a brokerage fee of one percent (1%) of the outstanding principal balance as an extension fee ("Extension Fee"). A separate Extension Fee will be charged for each six (6) month extension of the Maturity Date, at Lender's discretion.

**2.10.2** **Notice of Extension of Maturity Date.** Lender shall provide Borrower with notice of the extension within ten (10) days after the Maturity Date.

**2.10.3** **Adjustable Interest Rate and Payment Changes.** Upon Lender exercising its discretionary right to extend the Maturity Date of the Note, the interest rate on the unpaid principal balance, which shall include the Extension Fee, shall change from a fixed rate of interest to an adjustable rate of interest that may change on the first day every month thereafter based on the most recent Index figure as referenced below is as follows:

   **i.** **Change Dates.** The date on which Borrower's initial fixed interest rate changes to an adjustable interest rate, and each date on which Borrower's adjustable interest rate could change is called a "Change Date."

# Attachment 8 - Promissory Note

      **ii.**   **The Index.** At each Change Date, Borrower's interest rate will be based on an Index. The "Index" is the Prime Rate as published in the *Wall Street Journal*. The most recent Index figure available as of the date of the first day of the month preceding each Change Date is called the "Current Index." If the Index is no longer available, Lender will choose a new index that is based upon comparable information. Lender will give Borrower notice of this choice.

      **iii.**   **Calculation of Change.** Before the Change Date, Lender will calculate Borrower's new interest rate by adding **Six and One Half percentage points (6.50%)** ("Margin") to the Current Index. Lender will then round the result of this addition to the next higher one-quarter of one percentage point (0.25%). Subject to the Floor Rate stated in Section 2.10.3(iv) below, this rounded amount will be Borrower's new interest rate until the Maturity Date.

      **Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at Borrower's new interest rate in substantially equal payments. The result of this calculation will be the new amount of Borrower's monthly payment (only applicable if an amortized loan).**

      **iv.**   **Limits on Interest Rate Change.** The interest rate Borrower is required to pay at the first Change Date will not be greater than **12.25%** or less than **10.25%**. Thereafter, Borrower's adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest Borrower has been paying for the preceding month. Borrower's interest rate will never be greater than **20.25%** (the "Maximum Rate"), nor less than **10.25%** (the "Floor Rate") except as provided in Section 6 herein (Interest on Default).

      **v.**   **Effective Date of Change.** Borrower's new interest rate will become effective on the Change Date. Borrower will pay the amount of his, her or their new monthly payment beginning on the first monthly payment date after the Change Date.

      **vi.**   **Notice of Change.** Lender will deliver or mail to me a notice of any change in Borrower's interest rate and the amount of Borrower's monthly payment before the effective date of any change. The notice will include information required by law to be given to Borrower and also the title and telephone number of a person who will answer any question Borrower may have regarding the notice.

**3.**   **Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within ten (10) days when due, a charge of 10 cents ($0.10) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4.**   **Default.** Default shall occur on (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Deed of Trust), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5.**   **Prepayment.**

      **5.1**   **REMOVED**

      **5.2**   **Ability to Pay Prepayment.** Borrower shall have no right to prepay and Lender shall have no duty to accept full or partial prepayment of this Note without Borrower giving Lender thirty (30) days prior written notice of his, her or its intention to prepay this Note. Said notice shall include the amount Borrower intends to repay. Borrower shall pay Lender the principal due under this Note together with (a) any prepayment premium contemplated in paragraph 5.1 of this Note and (b) any accrued but yet unpaid interest and fees.

      **5.3**   **Prepayment Waivers.** BORROWER ACKNOWLEDGES AND AGREES THAT BORROWER HAS NO RIGHT TO PREPAY THIS PROMISSORY NOTE EXCEPT AS PROVIDED IN THIS PARAGRAPH 5. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT IF THE MATURITY DATE IS ACCELERATED BY LENDER PURSUANT TO PARAGRAPH 4 OR 8, AND BORROWER OR ANY THIRD PERSON (INCLUDING, WITHOUT LIMITATION, A JUNIOR LIEN LENDER OF THE PROPERTY) THEREAFTER SEEKS TO PAY OFF SUCH ACCELERATED INDEBTEDNESS OR PURCHASE THE PROPERTY AT A FORECLOSURE SALE (WHETHER JUDICIAL OR NON-JUDICIAL), SUCH PAYOFF OR

# Attachment 8 - Promissory Note

PURCHASE SHALL CONSTITUTE A PREPAYMENT HEREUNDER AND THE PREPAYMENT PREMIUM SET FORTH ABOVE SHALL BE DUE IN THE EVENT PREPAYMENT OCCURS. BY INITIALING BELOW, BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT BORROWER SHALL PAY THE PREPAYMENT PREMIUM, EVEN IN THE CASE WHERE LENDER HAS ACCELERATED THE MATURITY DATE PURSUANT TO PARAGRAPH 4 OR PARAGRAPH 8; THAT THE CALCULATION OF THE PREPAYMENT PREMIUM IS FAIR AND REASONABLE TO COMPENSATE LENDER FOR THE LOSS WHICH LENDER MAY INCUR AS A RESULT OF PREPAYMENT OF THIS PROMISSORY NOTE; THAT BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE OR CLAIM TO HAVE UNDER CALIFORNIA CIVIL CODE SECTION 2954.10 OR ANY SUCCESSOR STATUTE; AND THAT LENDER HAS MADE THE LOAN EVIDENCED BY THIS PROMISSORY NOTE IN RELIANCE ON THE AGREEMENTS AND WAIVERS OF BORROWER IN THIS PARAGRAPH 5 AND LENDER WOULD NOT HAVE MADE THE LOAN WITHOUT SUCH AGREEMENTS AND WAIVERS.

**BORROWER'S INITIALS:** _____

6. **Interest on Default.** If Borrower is in default under this Note, as that event is contemplated under paragraph 4 of this Note, or defaults under any other clause of any document associated with this Note, then the entire unpaid principal balance shall automatically bear an annual interest rate (instead of the rate specified in paragraph 1) equal to the lesser of (a) Twenty-Five percent (25%) or (b) the maximum interest rate allowed by law (the "Default Rate"). If the Maturity Date is accelerated pursuant to Paragraph 4, the unpaid principal shall accrue interest at the Default Rate only until the default is cured and the Deed of Trust is reinstated. Borrower acknowledges and agrees that it would be extremely difficult or impractical to fix the actual damages resulting from Borrower's failure to pay the principal, accrued interest and other sums as and when due, and therefore Borrower shall pay interest at the Default Rate not as a penalty, but for purposes of defraying the expenses incident to handling the past due principal, accrued interest and other sums due under this Promissory Note. Interest at the Default Rate represents the reasonable estimate of the loss that may be sustained by Lender due to the failure of Borrower to pay the principal, accrued interest and other sums as and when due. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Promissory Note (including, without limitation, late charges pursuant to Paragraph 3, above) or the Deed of Trust.

7. **Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8. **Due-on-Sale.** If Borrower sells, conveys, assigns or otherwise transfers (a) all or any part of the Property, (b) any interest in the Property, or (c) all or substantially all of the beneficial interest of Borrower (which shall include, without limitation, a sale or other transfer of twenty five percent (25%) or more of the shares of Borrower if Borrower is a corporation, a sale or other transfer of twenty five percent (25%) or more of the general partners' interests in Borrower if Borrower is a partnership, as sale or other transfer of twenty five percent (25%) or more of the membership interests of Borrower if Borrower is a Limited Liability Company, and/or a sale or other transfer of twenty five percent (25%) or more of the Borrower's assets ), whether any such sale, conveyance, assignment or other transfer occurs directly or indirectly, voluntarily or involuntarily or by operation of law, without the prior written consent of Lender (which may be withheld in Lender's sole and absolute discretion), then Lender may elect, in its sole and absolute discretion, to accelerate the Maturity Date and declare the entire unpaid principal, accrued interest and other sums due hereunder to be immediately due and payable.

9. **Attorney Fees.** Borrower agrees to pay the following costs, expenses, and attorney fees (as "attorney fees" are defined in section 1.1 of the Deed of Trust) paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Deed of Trust; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

10. **Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Promissory Note, any acceptance of additional security of any kind and any release of any party liable under this Promissory Note. Any such renewals or extensions may be made without notice to Borrower.

# Attachment 8 - Promissory Note

11. **Notice.** Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; or (c) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following addresses:

| | |
|---|---|
| Lender: | The Socotra Opportunity Fund, LLC<br>c/o Socotra Capital,<br>2208 29th Street, Suite 100,<br>Sacramento, CA 95817 |
| Borrower: | AME Zion Western Episcopal District<br>2339 W. Hammer Ln, Suite C #153<br>Stockton, CA 95209 |

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

12. **Secured by Deed of Trust.** This Note is secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust" or "Security Instrument") of even date herewith made by Borrower, as trustor, for the benefit of Lender, as beneficiary.

13. **Forbearance Not a Waiver.** If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition under this Note. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14. **Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

15. **Governing Law.** This Note shall be construed and enforce able according to the laws of the State of California for all purposes.

16. **Made or Arranged by a California Finance Lender and Broker.** Borrower acknowledges that this Note was made or arranged by a licensed California Finance Lender and Broker (Socotra Capital, Inc., CFL #60DBO52860) and that the broker's participation was a material factor in consummating this loan.

17. **Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note or the Deed of Trust securing this Note or any other agreement pertaining to this Note, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

18. **Time Is of the Essence.** Time is of the essence with respect to all obligations of Borrower under this Note.

19. **Cross-Default.** Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender; shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section:

"**Affiliate**" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person.

"**Control**" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means.

"**Person**" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

BORROWER'S INITIALS: _____

20. **Dispute Resolution: Waiver of Right to Jury Trial.**
    20.1    **ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).
    20.2    **WAIVER OF RIGHT TO JURY TRIAL.** TO THE EXTENT PERMITTED BY SAID APPLICABLE LAW, BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON, OR ARISING FROM, THIS NOTE THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF BENEFITS OF THIS NOTE., LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS NOTE OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS NOTE.

BORROWER'S INITIALS: _____

21. **Representation on Use of Proceeds.** Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for personal, family, or household purposes.

22. **Assignment.** Holder may, at its sole option, assign this Promissory Note and/or designate any other person or entity as the holder hereof.

23. **No Modifications or Amendments; No Waiver.** Except as specified herein, this Promissory Note may not be amended, modified or changed, nor shall any waiver of the provisions hereof be effective, except only by an instrument in writing signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

24. **Severability.** Any provision of this Promissory Note which shall be held by a court of competent jurisdiction to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision or term hereof, and such other provisions or terms shall remain in full force and effect.

# Attachment 8 - Promissory Note
Case 20-23726       Claim 8-1

25.    **Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, successors and assigns.

26.    **Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Deed of Trust, this Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by the Deed of Trust to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Deed of Trust, this Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Loan or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transaction (including, without limitation, a Rating Agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the Rating Agency or such other purchasers, participants or investors, and addressing such matters as the Rating Agency or such other purchasers, participants, or investors may require; provided, however, that the Borrower shall not be required to modify any documents evidencing or securing the Loan that would modify (i) the interest rate payable under this Note, (ii) the stated maturity of this Note, (iii) the amortization of principal of this Note, or (iv) any other material terms or covenants of the Loan. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the Rating Agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transaction. Lender shall have the right to provide to the Rating Agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

27.    **Obligations of Borrower Joint and Several.** If more than one Person or entity is named as Borrower, each obligation of Borrower under this Note shall be the joint and several obligations of each individual such Person or entity. Any percentages that appear in the identification of the Borrower shall have no effect on the obligations under this Note, and each individual Person or entity named as Borrower shall be jointly and severally responsible for one-hundred percent (100%) of the obligations under this Note.

28.    **Cannabis Related Tenants.**

     28.1    **Tenant Permitting.** In the event the Property is leased to a tenant that intends to utilize the Property to conduct activities involving cannabis and is subject to regulation under California and local law ("Cannabis Business"), Borrower agrees that it shall not allow any such tenant to operate any Cannabis Business at the Property without first receiving proof of compliance with applicable state and local law and delivering such proof to Lender. Evidence of compliance shall include a copy of a permit issued by the applicable local governmental authority authorizing Tenant to operate a Cannabis Business at the Property. In no event shall Borrower operate a Cannabis Business at or on the Property.

     28.2    **Compliance Defaults.** The following shall constitute additional Events of Default under the terms of the Note and the Deed of Trust ("Compliance Default"): a) Borrower fails to provide proof of Tenant's compliance as required under Section 28.1; b) Tenant commences operating a Cannabis Business at the Property without complying with applicable California and local law and providing proof of such compliance to Lender; c) Borrower, Tenant or other occupant of the Property uses the Property in a manner that is not in compliance with California and local law; or d) any Federal, State, or local governmental authority commences a forfeiture proceeding against the Property. In the event of a Compliance Default Lender may, at its option, declare the Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**BORROWER:**
AME Zion Western Episcopal District

By: Sandra K. Davis
Its: President

EXHIBIT "K"

# Attachment 9 - Deed of Trust
Case 20-23??        Claim 8-1

| | |
|---|---|
| **Recording Requested By**<br>**Old Republic Title**<br><br>**WHEN RECORDED, RETURN TO:**<br><br>The Socotra Opportunity Fund, LLC<br>c/o Socotra Capital<br>2208 29th Street, Suite 100<br>Sacramento, California 95817<br><br>Loan No. 19-142CF | **Sacramento County**<br>**Donna Allred, Clerk/Recorder**<br>Doc # **201912131149**<br><br>12/13/2019   3:26:44 PM<br>JDH        Electronic<br>Titles  5<br>Pages  30 |

| | |
|---|---|
| Fees | $412.00 |
| Taxes | $0.00 |
| PCOR | $0.00 |
| Paid | $412.00 |

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

Note Amount: $410,000.00
Property Address: 2940 42nd Street, Sacramento, CA 95817
APN: 014-0152-041-0000

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of 12/05/2019, among AME Zion Western Episcopal District ("Borrower"), whose address is 2339 W. Hammer Ln, Suite C #153 Stockton CA 95209; Old Republic Title, a title & escrow company ("Trustee"); and The Socotra Opportunity Fund, LLC, a California Limited Liability Company ("Lender"), whose address is c/o Socotra Capital, 2208 29th Street, Suite 100, Sacramento, California 95817.

### TRANSFER OF RIGHTS IN THE PROPERTY

     To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

     Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

     Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

     TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION,

# Attachment 9 - Deed of Trust

**Recording Requested By**
**Old Republic Title**

**WHEN RECORDED, RETURN TO:**

The Socotra Opportunity Fund, LLC
c/o Socotra Capital
2208 29th Street, Suite 100
Sacramento, California 95817

Loan No. 19-142CF

---

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount: $410,000.00**
**Property Address: 2940 42nd Street, Sacramento, CA 95817**
**APN: 014-0152-041-0000**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of **12/05/2019**, among **AME Zion Western Episcopal District** ("Borrower"), whose address is 2339 W. Hammer Ln, Suite C #153 Stockton CA 95209; **Old Republic Title**, a title & escrow company ("Trustee"); and **The Socotra Opportunity Fund, LLC, a California Limited Liability Company** ("Lender"), whose address is c/o Socotra Capital, 2208 29th Street, Suite 100, Sacramento, California 95817.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION,

# Attachment 9 - Deed of Trust

COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

1. **Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

    1.1. **"Attorney Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

    1.2. **"Borrower."**

        1.2.1. The named Borrower in this Deed of Trust;

        1.2.2. The obligor under the Note, whether or not named as Borrower in this Deed of Trust; and

        1.2.3. Subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person identified in Sections 1.2.1 and/or 1.2.2.

    1.3. **"Default Rate."** The Default Rate as defined in the Note.

    1.4. **"Event of Default."** An Event of Default as defined in paragraph 19 of this Deed of Trust.

    1.5. **"Environmental Laws."** Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

    1.6. **"Fixtures."** All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

    1.7. **"Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

    1.8. **"Governmental Requirements."** Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

    1.9. **"Hazardous Substance."** Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

# Attachment 9 – Deed of Trust

**1.10.** "**Impositions.**" All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.11.** "**Improvements.**" Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

**1.12.** "**Indebtedness.**" The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2. This Deed of Trust and all other Loan Documents;

1.12.3. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.13.** "**Land.**" The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.14.** "**Leases.**" Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all Leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15.** "**Legal Requirements.**" Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16.** "**Lender.**" The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17.** "**Loan.**" The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

    **1.18.** "**Loan Documents.**" Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

    **1.19.** "**Mortgaged Property.**" The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF.

commonly known as **2940 42nd Street, Sacramento, CA 95817, APN: 014-0152-041-0000**

together with:

    1.19.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

    1.19.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

    1.19.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

    1.19.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

    1.19.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

    1.19.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

    1.19.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

    1.19.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9.  All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

1.19.10.  All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.19.11.  All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.19.12.  All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.19.13.  All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.19.14.  All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.19.15.  All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

1.20.  "**Note**." The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Four Hundred Ten Thousand and 00/100 Dollars ($410,000.00)**, evidencing the Loan, which may be increased in the event the maturity date is extended pursuant to the terms of the Note, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

1.21.  "**Obligations**." Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

1.22.  "**Permitted Encumbrances**." At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an

ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

    1.23.   **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

    1.24.   **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

    1.25.   **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

    1.26.   **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

    Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

    2.   **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the

Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

3.        **Use of Mortgaged Property.**  Unless otherwise required by Governmental Requirements or unless Lender otherwise consents in writing, Borrower shall not allow changes in the use of the Mortgaged Property from that which is contemplated by Borrower and Lender at the time of execution of this Deed of Trust, as specified in the loan application and the Loan Documents.  Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4.        **Insurance.**
          4.1.      **Casualty Insurance.**  Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

                    4.1.1.  Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

                    4.1.2.  Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

                    4.1.3.  Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

                    4.1.4.  Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

                    4.1.5.  During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

                    4.1.6.  Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

          4.2.      **Liability Insurance.**  Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $5,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

          4.3.      **Other Insurance.**  Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

          4.4.      **Form of Policies.**  All insurance required under this paragraph 4 shall be fully paid for and nonassessable.  The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion.  Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better.  All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve.  If a policy required under this paragraph contains

# Attachment 9 - Deed of Trust

a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5.** **Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**4.6.** **Increased Coverage.** If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7.** **No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8.** **Transfer of Title.** In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.** **Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.** **Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.** **Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.** **Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.** **Condemnation and Insurance Proceeds.**

**5.1.** **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or

in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $5,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

     **5.2.**    **Insurance Payments.**    All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

     5.2.1.    Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

     5.2.2.    If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

     **5.3.**    **Material Loss Not Covered.**    If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

0043

# Attachment 9 - Deed of Trust

**5.4.**   **Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

**5.5.**   **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

**5.6.**   **No Cure of Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.**   **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this paragraph 6, Lender may (but is not obligated to) make such payment. In the event Lender advances funds for the payment of property taxes, insurance, assessments, or other amounts due on the Mortgaged Property, Lender shall provide Borrower with written notice of the amounts paid on Borrower's behalf. Within ten (10) calendar days of the date of the written notice, Borrower shall deposit such amounts in Borrower's bank account and Lender shall collect the payment for the amounts advanced via electronic funds transfer from Borrower's bank account.

**7.**   **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to

# Attachment 9 - Deed of Trust

such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.14 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, , then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**8.**    **Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

# Attachment 9 – Deed of Trust

**9.**     **Funds for Taxes and Insurance.** If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**10.**     **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**11.**     **Defense of Deed of Trust; Litigation.** Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute

# Attachment 9 – Deed of Trust
Case 20-23726                                                    Claim 8-1

resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

12.     **Borrower's Failure to Comply With Deed of Trust.**  If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

13.     **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.**  At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

14.     **Inspection of Mortgaged Property.**  In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

15.     **Financial Statements; Estoppel Certificates.**

     15.1.     **Borrower's Financial Statements.**  On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

     15.2.     **Recordkeeping.**  Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and

attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

15.3.    **Guarantors' Financial Statements.** Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted accounting principles and practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

15.4.    **Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

15.5.    **Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

15.6.    **Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

15.7.    **No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

16.    **Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the California Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State

# Attachment 9 - Deed of Trust

of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

17.  **Fixture Filing.**  This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

18.  **Waiver of Statute of Limitations.**  Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19.  **Events of Default.**  The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1.  **Payment of Indebtedness.**  Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2.  **Performance of Obligations.**  The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

19.3.  **Judgment.**  If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4.  **Voluntary Bankruptcy.**  If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5.  **Involuntary Bankruptcy.**  If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 90 days after its entry.

19.6.  **Foreclosure of Other Liens.**  If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 60 days after institution of such foreclosure proceedings.

19.7.  **Sale, Lease, Encumbrance, or Other Transfer.**  Any sale, lease, exchange, assignment, conveyance, encumbrance (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust) (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without

Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8.** **Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a first and prior lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**19.9.** **Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10.** **Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 60 days after such levy.

**19.11.** **Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12.** **Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**19.13.** **Failure to Deposit Funds in Bank Account Subject to ACH Withdrawals.** In the event Lender advances funds for the payment of property taxes, insurance, assessments, or other amounts due on the Mortgaged Property for the purpose of protecting Lender's priority lien position, the failure by Borrower to timely deposit funds in Borrower's bank account in an amount sufficient to repay Lender for the amounts advanced via electronic funds transfer from Borrower's bank account

**19.14.** **Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgage Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**20.** **Acceleration on Transfer or Encumbrance.**

**20.1.** **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of this Deed of Trust), or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower equal to 25 percent or more of the beneficial ownership interests of Borrower outstanding at the date of this Deed of Trust; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**20.2.** **Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject

to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

    **20.3.**   **Permitted Encumbrances.**   If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21.**     **Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

    The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

**22.**     **Borrower's Obligation to Notify Lender.**

    **22.1**   **Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in paragraphs 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

    **22.2**   **Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23.**     **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying

the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

24.    **Environmental Matters.**

    24.1.    **Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

        24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

        24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

        24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

        24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

        24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

        24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

        24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

        24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

        24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

        24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

    24.2.    **Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

    24.3.    **Notice to Lender.** Borrower shall give prompt written notice to Lender of:

        24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

        24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

        24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

        24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4.**   **Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5.**   **Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25.**   **Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26.**   **Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

**27.**   **Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

**28.**   **Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

**29.**   **No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the

Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

30.     **Consents and Modifications; Borrower and Lien Not Released.**  Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

31.     **Waiver of Right of Offset.**  No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

**32.**    **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s) are secured by this Deed of Trust.

**33.**    **Prepayment.** If the Note secured by this Deed of Trust provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

**34.**    **Additional Borrower Representations.** To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

   **34.1.**    **Capacity.** Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

   **34.2.**    **Authority and Enforceability.** Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

   **34.3.**    **Compliance With Other Instruments.** The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

   **34.4.**    **Compliance With Law.** The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

   **34.5.**    **Material Adverse Events.** Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

   **34.6.**    **Litigation.** There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

   **34.7.**    **No Untrue Statements.** All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**34.8.** **Policies of Insurance.** Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

**34.9.** **Financial Statements.** All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

**34.10.** **Water Rights.** (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title report described in paragraph 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11.** **Taxes.** Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12.** **Leases.** If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13.** **Further Acts.** Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14.** **Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15.** **Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35.** **Governing Law.** This instrument shall be deemed to have been made in the State of California, and the validity of this Deed of Trust and the other Loan Documents, their construction, interpretation, and enforcement, and the parties' rights under such documents and concerning the Mortgaged Property, shall be decided under, governed by, and construed in accordance with the laws of the State of California. The parties agree that all actions or proceedings arising in connection with this Deed of Trust and the other Loan Documents shall be tried and litigated only in the state courts located in the Sacramento County, California, or the applicable federal district court that

# Attachment 9 - Deed of Trust
Case 20-23726

covers said county. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

36. **Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

37. **Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

38. **Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person who is or may be entitled to any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

39. **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

40. **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

Lender:      The Socotra Opportunity Fund, LLC
C/O Socotra Capital
2208 29th Street, Suite 100
Sacramento, CA 95817

Borrower:      AME Zion Western Episcopal District
2339 W. Hammer Ln, Suite C #153
Stockton, CA 95209

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

41. **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

# Attachment 9 - Deed of Trust

**42. Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**43. Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**44. Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

**45. Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**46. Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**47. General Provisions.**

    **47.1. Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

    **47.2. Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

    **47.3. Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

    **47.4. Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

    **47.5. Captions.** Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

    **47.6. Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48. Leasehold Provisions.**

    **48.1. Leasehold Estate.** If the security for this Deed of Trust is a leasehold estate demised by a lease (the "Leasehold"), this Deed of Trust shall be a lien on all present and future right, title, estate, and interest of Borrower in the Mortgaged Property and Improvements covered by the Leasehold and on all Mortgaged Property interests acquired by Borrower as a result of the exercise of any option in the Leasehold or as amended, in the same manner and to the same extent as if the Mortgaged Property encompassed in the Leasehold and option agreements had been held in fee by Borrower at the time of the execution of this Deed of Trust, and Borrower agrees not to amend, change, or modify its leasehold interest, or any of its terms, or to exercise any option to purchase, or agree to do so, without having obtained Lender's prior written consent. In a violation of this provision, Lender may, at its option, declare all sums secured by this Deed of Trust immediately due and payable. Consent to any amendment, change, or modification, or a waiver of the right to require such consent in one instance, shall not be a waiver of the right to require such consent at a subsequent time. The term "Mortgaged Property" as used in this Deed of Trust means such leasehold estate or any other present or future interest of Borrower in the Mortgaged Property whenever the context requires.

    **48.2. Compliance With Leasehold.** In the event that the security for this Deed of Trust is a leasehold estate, Borrower covenants and agrees as follows: (a) to promptly and faithfully observe, perform, and comply with all Leasehold terms, covenants, and provisions on its part to be observed, performed, and complied with, at the times

set forth in the Leasehold; (b) not to do, permit, suffer, or refrain from doing anything, as a result of which, there would be a default under or breach of any of the terms of the Leasehold; (c) not to cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the terms of the Leasehold; (d) to give Lender immediate notice of any default by anyone under the Leasehold and to promptly deliver to Lender copies of each notice of default and all other notices, communications, plans, specifications, and other similar instruments received or delivered by Borrower in this connection; (e) to furnish to Lender such information and evidence as Lender may reasonably require for Borrower's due observance, performance, and compliance with the Leasehold terms, covenants, and provisions; (f) that any default of the tenant under the Leasehold shall constitute an Event of Default under this Deed of Trust; and (g) to give immediate written notice to Lender of the commencement of any remedial proceedings under the Leasehold by any party to it and, if required by Lender, to permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings. Borrower expressly transfers and assigns to Lender the benefit of all covenants in the Leasehold, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants or any other covenants in the Leasehold.

    **48.3.**    **Borrower's Warranties and Representations.** With respect to the Leasehold, Borrower warrants and represents as follows: (a) the Leasehold is in full force and effect, unmodified by any writing or otherwise, except as specifically set forth in Exhibit B; (b) all rent, additional rent, and other charges reserved in the Leasehold have been paid to the extent they are payable to the date of this Deed of Trust; (c) Borrower enjoys the quiet and peaceful possession of the Mortgaged Property demised by the Leasehold; (d) Borrower is not in default under any Leasehold term and, to the best of its knowledge, there are no circumstances that, with the passage of time or the giving of notice or both, would constitute an Event of Default under the Leasehold; (e) to the best of Borrower's knowledge, the landlord under the Leasehold is not in default under any Leasehold term or provision the landlord is required to observe or perform.

    **48.4.**    **Assignments to Lender.** If Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency, moratorium law, or any other law or laws for the relief of or relating to debtors, on demand by Lender, Borrower covenants to transfer and assign to Lender its leasehold estate and the Leasehold in lieu of rejection of the Leasehold by Borrower and covenants to assign to Lender its right to accept or reject the Leasehold and to apply for any extension of time within which to accept or reject the Leasehold. These assignments to Lender shall be automatic on Lender's demand. If Lender demands the assignment of the Leasehold under this Deed of Trust, Lender covenants to cure any defaults outstanding under the Leasehold after the Leasehold is assigned to Lender.

    **48.5.**    **Default Under Leasehold.** If Borrower defaults in performing any of its obligations under the Leasehold, including, without limitation, any default in the payment of rent and other charges and impositions made payable by the tenant under the Leasehold, then, in each and every case, Lender may, at its option and without notice, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of Borrower under the Leasehold in the name of and on behalf of Borrower. Borrower shall, on demand, reimburse Lender for all advances made and expenses incurred by Lender in curing any such default (including, without limitation, reasonable Attorney Fees), together with interest computed at the rate provided for in the Note from the date that an advance is made or expense is incurred, to and including the date the same is paid. Lender shall have no duty to prevent the termination of the leasehold estate by the landlord. If the landlord terminates the leasehold estate, Lender shall have the right, at its option, to declare all sums secured by this Deed of Trust immediately due and payable and immediately bring an action on the Note, provided there is no other real property security for the Note.

    **48.6.**    **Options.** Borrower shall give Lender notice of its intention to exercise each and every option to extend the term of the Leasehold at least 20 days but not more than 60 days before expiration of the time to exercise such option under the Leasehold. If Borrower intends to extend the term of the Leasehold, it shall deliver to Lender, with the notice of such decision, a copy of the notice of extension delivered to the landlord under the Leasehold. If Borrower does not intend to extend the term of the Leasehold, Lender may, at its option, exercise the option to extend in the name and on behalf of Borrower.

    **48.7.**    **No Merger/Attorney-in-Fact.** It is hereby agreed that the fee title, the leasehold estate, and the subleasehold estate in the Mortgaged Property demised by the Leasehold shall not merge but shall be kept separate and distinct, despite the union of these estates in either the landlord under the Leasehold, Borrower, or a third party, whether by purchase or otherwise. If Borrower acquires the fee title or any other estate, title, or interest in the Mortgaged Property demised by the Leasehold or any part of it, the lien of this Deed of Trust shall attach to, cover, and be a lien on such acquired estate, title, or interest and it shall simultaneously be and become a part of the Mortgaged Property with the same force and effect as if specifically encumbered in this Deed of Trust. Borrower agrees to execute all instruments and documents that Lender may reasonably require to ratify, confirm, and further evidence Lender's lien on the acquired estate, title, or interest. Furthermore, Borrower appoints Lender as its true

and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Borrower. This power, being coupled with an interest, shall be irrevocable as long as any amounts secured by this Deed of Trust remain unpaid.

**48.8.    Interests in Successor Leasehold.**  If the Leasehold is canceled or terminated, and if Lender or its nominee shall acquire an interest in any new lease of the Mortgaged Property demised by the Leasehold, Borrower shall have no right, title, or interest in or to the new lease or the leasehold estate created by such new lease.

**48.9.    Estoppel Certificate.**  Borrower shall use its best efforts to obtain and deliver to Lender, within 20 days after written demand by Lender, an estoppel certificate from the landlord under the Leasehold setting forth (a) the name of the tenant under the Leasehold, (b) that the Leasehold has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (c) the basic rent payable under the Leasehold, (d) the date to which the tenant paid all rental charges under the Leasehold, and (e) whether there are any alleged defaults of the tenant under the Leasehold and, if there are, setting forth their nature in reasonable detail.

**48.10.    Limitations on Lender's Liability Under Leasehold.**  Despite anything to the contrary in this Deed of Trust, this Deed of Trust shall not constitute an assignment of the Leasehold within the meaning of any provision of the Leasehold prohibiting its assignment, and Lender shall have no liability or obligation under the Leasehold because of its acceptance of this Deed of Trust. Lender shall be liable for the tenant's obligations arising under the Leasehold for only that period of time that Lender is in possession of the Mortgaged Property covered by the Leasehold or has acquired, by foreclosure or otherwise, and is holding all of Borrower's right, title, and interest in the Mortgaged Property covered by the Leasehold.

**49.    Improper Financial Transactions.**

**49.1**    Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

**49.2**    Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

**49.3**    Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

**49.4**    Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

**49.5**    Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

**49.6**    As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**50.    Dispute Resolution: Waiver of Right to Jury Trial**

**50.1    ARBITRATION.**  CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**50.2     WAIVER OF RIGHT TO JURY TRIAL.**     TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

**BORROWER'S INITIALS:**

**50.3     PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.**  Nothing in Section 50.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 50.2, above. Neither the exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 50.2, above.

**51.     Contractual Right to Appoint a Receiver Upon Default.**  Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

**BORROWER:**
**AME Zion Western Episcopal District**

By: Sandra K. Davis
Its: President

# Attachment 9 - Deed of Trust

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA** )
                        ) ss.

**COUNTY OF** _Placer_ )

On _12/12/19_ , 20___ before me, _Tammy Williams, Notary Public_ personally appeared _Sandra K. Davis_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

TAMMY WILLIAMS
Notary Public - California
Placer County
Commission # 2247713
My Comm. Expires Jun 25, 2022

# Attachment 9 - Deed of Trust

**ORDER NO. :** 2121042650

# EXHIBIT A

The land referred to is situated in the County of Sacramento, City of Sacramento, State of California, and is described as follows:

PARCEL ONE:

Lots 6, 7, 8, 9 and 10, as shown on the "Plat of East Side Addition to Oak Park", recorded June 19, 1908 in Book 9 of Maps, Map No. 8, Records of said County.

PARCEL TWO:

Lot 13 as shown on the "Plat of East Side Addition to Oak Park", recorded in the Office of the County Recorder of Sacramento County in Book 9 of Maps, Map No. 8, excepting therefrom the following:

Beginning at the Southeast corner of Lot 13, as the same is shown on Official "Plat of East Side Addition to Oak Park", recorded in the Office of the County Recorder of Sacramento County on June 19, 1908, in Book 9 of Maps, Map No. 8; which point is further described as being located North 77° 32.60' West 103.29 feet from a monument marking the new center line intersection of Forty-Second Street and Fifth Avenue, in said City of Sacramento; thence from the point of beginning, South 89° 59.32' West 39.99 feet along the Southerly line of said Lot 13, to the Southwest corner thereof; thence North 2° 12.65' West 12.90 feet along the Westerly line of said Lot 13 to a point; thence South 89° 08.24' East 40.02 feet along a line parallel to and distant 33.00 feet at right angles Northerly from the new center line of Fifth Avenue to a point on the Easterly line of said Lot 13; thence South 2° 12.65' East 12.28 feet along the Easterly line of said Lot 13 to a point of beginning.

PARCEL THREE:

All of Lot 14, as shown on the Official "Plat of East Side Addition to Oak Park", recorded in Book 9 of Maps, Map No. 8, Records of said County.

EXCEPTING that portion thereof described as follows:

Beginning at the original Southeast corner of said Lot 14; which said point is further described as being located North 81° 01.30' West 142.70 feet from a monument marking the present center line intersection of 5th Avenue and 42nd Street, of said City of Sacramento; thence from the point of beginning South 89° 59.32' West 39.99 feet along the original South line of said Lot 14, to the Southwest corner thereof; thence North 2° 12.65' West 13.51 feet along the West line of said Lot 14, to a point on the present North line of said 5th Avenue; thence South 89° 08.24' East 40.02 feet along the present North line of said 5th Avenue, to the East line of said Lot 14; thence South 2° 12.65' East 12.90 feet along the East line of said Lot 14, to the point of beginning.

PARCEL FOUR:

0063

Lot 15, as shown on the Official "Plat of East Side Addition to Oak Park", recorded in Book 9 of Maps, Map No. 8, Records of said County.

EXCEPTING THEREFROM all that portion thereof conveyed by the Deed dated July 14, 1937, recorded July 14, 1937, in Book 646 of Official Records, Page 179, executed by Property Finance Corporation, a corporation, to the City of Sacramento, a municipal corporation, described as follows:

Beginning at the Southeast corner of Lot 15 as shown on the Official "Plat of East Side Addition to Oak Park" which point is further described as being located North 82° 58.96' West 182.21 feet from a monument marking the center line intersection of 42nd Street and 5th Avenue in said City of Sacramento; thence from the point of beginning South 89° 59.32' West 41.74 feet along the Southerly line of said Lot 15, to the Southwest corner thereof; thence North 2° 10.44' West 14.14 feet along the Westerly line of said Lot 15 to a point; thence South 89° 08.21' East 41.76 feet along a line parallel to and distant 33.00 feet at right angles Northerly from the new center line of said 5th Avenues to a point on the Easterly line of said Lot 15; thence South 2° 12.65' East 13.51 feet along the Easterly line of said Lot 15 to the point of beginning.

APN: 014-0152-041-0000